(20 Misc. Rep. 515.)

## MAY et al. v. BERMEL et al.

(Supreme Court, Special Term, Queens County.　June 16, 1897.)

TOWNS—BONDS—MAJORITY VOTE.

County Law, § 69, before the amendment of 1896, provided for the issuance of town bonds on request of certain officers, or "pursuant to a vote of the majority of the electors of any such town" at any meeting. The amendment of 1896 provided that such bonds should not be issued in Queens county except on the vote of a majority of the electors "voting at" any meeting. *Held*, that such amendment required only a majority of those voting on the bond proposition, not of the votes cast at the meeting on other questions.

Action by Henry May and others against Joseph Bermel, as supervisor of the town of Newtown, and others. Plaintiffs move for a permanent injunction. Denied.

This is an action by a taxpayer to restrain the supervisor and town clerk of the town of Newtown, in Queens county, from issuing 620 town bonds, of the par value of $1,000 each. It is alleged that it would be an illegal official act to issue such bonds, for the reason that the issuing thereof was never authorized by a vote of the electors of the town at a town meeting, as required by the statute. A proposition to raise $620,000 for such purpose by the issuing of town bonds was voted upon at the regular town meeting of 1897. Certain town officers were also elected thereat. There were 3,500 ballots cast, upon which votes were counted for such election of town officers. But only 2,597 electors voted on such proposition to raise money, 1,650 voting "Yes," and 947 "No." The ballots of the other electors on such proposition, viz. 903, were blank. Two ballots were used, one for the election of officers, and the other for the proposition, as required by section 83 of the election law. The plaintiffs claim that the 1,650 affirmative votes were insufficient, for the reason that they were not a majority of the electors voting at such town meeting.

Ira Leo Bamberger, for plaintiffs.
Townsend Scudder, for defendants.

GAYNOR, J. I think the issuing of the bonds was duly authorized at the town meeting. Prior to 1896, section 69 of the county law empowered the board of supervisors of any county to authorize the issuing of bonds by any town to construct, build, or repair highways and bridges, "pursuant to a vote of a majority of the electors of any such town at an annual town meeting, or special town meeting called for that purpose, or upon the written request of the commissioners of highways and town board." In 1896 this was amended by the addition of the following, viz.: "But in the county of Queens a vote of a majority of the electors of any such town or towns, voting at an annual town meeting, or special town meeting called for that purpose, must first be obtained," etc. It is not questioned but that the general provision of the statute contemplates only a majority of the electors who vote upon the proposition. It does not seem to me that by the amendment of 1896 the intention was to do more than withdraw the towns of Queens county from the alternative part of the general provision allowing the board of supervisors to act upon the written request of the commissioners of highways and town board, and subject them absolutely to the requirement of a town meeting vote. There was no intention to change the method of de-

termining a vote of a majority of the electors. It is too much to suppose that the legislature intended to introduce two such methods into the same section, or to apply a particular method to the towns of Queens county. The phrase "a vote of a majority of the electors of any such town or towns," in the amendment, is copied from the section as it was, and the words following, "voting at an annual town meeting, or special town meeting called for that purpose," mean who shall vote at such town meeting, etc. Thus read, the amendment is that a vote of a majority of the electors who shall vote must first be obtained, etc.; and this means a majority of those who shall vote upon the proposition, according to the better interpretation in respect of ascertaining election majorities. Every elector was obliged, under the election law. to deposit a separate ballot upon the proposition, as well as for the election of town officers, and did so. The 903 who cast blank ballots upon the proposition did not vote thereon. The 1,650 affirmative votes were a majority over the 947 negative, and that is the majority meant by the statute.

I see nothing to be gained from a review of the decisions of the several states upon the interpretation of similar statutes. They are not harmonious. I have been referred to only two in this state, viz. People v. Trustees of Village of Ft. Edward, 70 N. Y. 28, and Smith v. Proctor, 130 N. Y. 319, 29 N. E. 312. In the former the statute construed required that a special election by the "taxable inhabitants" be held, and provided that they might "at such meeting, by a majority vote," decide to raise a specified sum to aid in the construction of a railroad, and that, "in case a majority of said taxable inhabitants shall vote to raise such sum," bonds should be issued. This was held to require a majority of the taxable inhabitants of the village, and not merely a majority of those who should vote. This decision may not seem to be in accordance with the language of the statute, but all of the other statutes of the state allowing towns and villages to bond themselves to aid railroads in terms required the consent of a majority of the taxable inhabitants, and the court interpreted the statute to conform to the general policy thus manifested upon the subject by the legislature. In the latter, the school statute, providing that "a majority of all the inhabitants of any school district entitled to vote, to be ascertained by taking and recording the ayes and noes" at a school district meeting, could authorize the building of a schoolhouse, was construed. It would seem that the thing directed to be ascertained by taking and recording the ayes and noes was whether those voting in the affirmative were a majority of all the inhabitants of the district, but it was held that the purpose was to ascertain a majority of those voting only, and that such an affirmative was sufficient. In the light of these two decisions, and of settled principles applicable to the ascertainment of majorities at elections, it seems to me that the construction of the statute in question contended for by the plaintiffs is not the true one.

The motion for an injunction is denied.